```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS


DEXTER L. SOLOMON,              )
                                )
               Plaintiff,       )
                                )
vs.                             )    Case No. 07-1083-MLB
                                )
MICHAEL J. ASTRUE,              )
Commissioner of                 )
Social Security,                )
                                )
               Defendant.       )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On August 11, 2006, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 14-24). Plaintiff alleged that his disability began September 15, 2004 (R. at 14). At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date (R. at

16).  At step two, the ALJ found that plaintiff had the following severe impairments: schizoaffective disorder, bipolar disorder, posttraumatic stress disorder, borderline personality disorder, and a history of closed head trauma (R. at 16).  At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 18-20).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff can perform past relevant work as a laborer, meat products, and as a commercial cleaner (R. at 23).  In the alternative, at step five, the ALJ found that plaintiff can perform other work which exists in significant numbers.  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24).

**III.  Did the ALJ err in his analysis of the opinions of plaintiff's case manager (Geniece Kossin) and plaintiff's treating psychiatrist (Dr. Xu)?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A

treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. <u>Watkins</u>, 350

F.3d at 1301.

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). Sources who are "other" medical sources (and not a treating or acceptable medical source) are an appropriate source of evidence regarding the severity of plaintiff's impairment, and the effect of his impairments on his ability to work. 20 C.F.R. 404.1513(a,d); Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003). In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight. Soc. Sec. Rul. 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2. However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.

Dr. Xu, plaintiff's treating psychiatrist at COMCARE, saw

the plaintiff from November 9, 2004 through July 3, 2006 (R. at 247). In a statement prepared on July 3, 2006, Dr. Xu found that plaintiff had the following marked impairments:

> The ability to understand and remember short and simple instructions.
>
> The ability to understand and remember detailed instructions.
>
> The ability to carry out detailed instructions.
>
> The ability to maintain attention and concentration for extended periods.
>
> The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.
>
> The ability to sustain an ordinary routine without special supervision.
>
> The ability to work in coordination with and proximity to others without being distracted by them.
>
> The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
>
> The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
>
> The ability to set realistic goals or make plans independently of others.

(R. at 249-250). Dr. Xu, in answer to the question of whether plaintiff's panic attacks results in "complete inability to function independently outside of the patient's home" answered

8

"YES" (R. at 248).

The ALJ discussed in detail the treatment records from COMCARE (R. at 19). His discussion of the weight he accorded to Dr. Xu's opinions is as follows:

> As for the opinion evidence, Lin Xu, M.D., the claimant's psychiatrist at Comcare, completed a statement on July 3, 2006 giving the opinion that the claimant is markedly limited in almost all areas of mental functioning and is completely unable to function independently outside of his home due to panic attacks (exhibit 10F). Dr. Lin and mental health sources at Comcare initially assigned a GAF of 20, which improved to 48. Social Security Ruling 96-2p states that if a treating source's medical opinion is well supported and consistent with the other substantial evidence in the case record, it must be given controlling weight. Dr. Lin's opinion regarding marked functional limitations is not supported by his objective findings, which show good eye contact, appropriate behavior, normal motor activity and speech, full orientation, above average intellectual functioning, logical and well organized thought processes, and good memory, and stabilized and improved mood due to medication. Dr. Lin's opinion that the claimant is unable to leave home independently is contradicted by his treatment notes documenting the claimant's ability to use bus transportation without assistance and to participate in a chess tournament. Because Dr. Lin's opinion is not supported by his objective findings, it is not entitled to controlling weight.
>
> Since it cannot be entitled to controlling weight, Dr. Xu's opinion must be analyzed to determine the appropriate weight that can be given to this opinion as noted in <u>Watkins v Barnhart</u>, 350 F 3d 1297. Factors for evaluating the weight of this opinion are:

> (1) length of treatment relationship and frequency of examination
> (2) nature and extent of treating relationship, including treatment provided and kind of examinations or testing administered
> (3) degree to which the treating source opinion is supported by relevant evidence
> (4) consistency between the opinion and the record as a whole
> (5) whether the treating source is a specialist in the area upon which an opinion is rendered
> (6) other factors brought to the Administrative Law Judge's attention that tend to support or contradict the opinion (20 CFR 416.927).
>
> Dr. Xu cosigned the Comcare intake assessment on October 5, 2004. He began seeing the claimant on a monthly basis in January, 2005. As noted above, his objective findings are essentially normal. Comcare treatment records document the claimant's ability to use bus transportation independently and to participate in a chess tournament. The claimant had plans to attend a Big Boy Toy Show, which is a crowded public event, and was noted to regularly go to the library. The claimant had no difficulty interacting with others in prison and he used to regularly frequent the homeless Drop In Center (exhibit 4E/23). Dr. Xu's opinion and the assigned GAF scores appear to reflect the claimant's stated limitations rather than the objective findings and therefore have not been given substantial weight.

(R. at 22).

The ALJ provided a detailed explanation for not giving either controlling or substantial weight to the opinions of Dr. Xu. The records from COMCARE indicate that on December 2, 2005, plaintiff was "engaged socially with others playing chess and

working out" and that "both activities are providing him with a better overall outlook on self and his ability to self-care" (R. at 274). When asked what is the most important aspect of this new behavior that was helping the most, plaintiff stated it was "his interactions with others and feeling less anxious and fearful of being around strangers in public places" (R. at 274). Dr. Xu commented that plaintiff was "making very good progress at this point" (R. at 274). A progress note from December 20, 2005 stated that plaintiff had attended a chess tournament over the weekend and was feeling very good about going and attempting to not only play, but to meet new people he had never seen before. Plaintiff further indicated he felt very comfortable and it helped his self-image to a small degree (R. at 268). A treatment note from April 12, 2006 noted "very good insight and personal attempts to improve social interaction skills" (R. at 261). Treatment notes from May 23, 2006 and June 8, 2006 noted "very good progress" (R. at 254, 253). Other treatment notes indicate plans to attend a Big Boy Toy Show (R. at 306, March 30, 2005), and that he took the bus by himself to go to COMCARE (R. at 259, May 1, 2006). Plaintiff stated on November 24, 2004 that he goes to the library, works on computers, and walks "to the best he can with my disability," and that he goes to the library and the homeless drop in center on a regular basis (R. at 98). Thus, the treatment notes from COMCARE and plaintiff's own statements

clearly do not support the opinion of Dr. Xu that plaintiff has a complete inability to function independently outside the area of plaintiff's home.

The ALJ also referenced a report from plaintiff's most recent employer (R. at 19) which does not support Dr. Xu's opinions that plaintiff has marked limitations in numerous areas. Debbie White, the business manager at Kansas Soldier's Home, stated that plaintiff was employed there from June 3, 2004 through August 27, 2004.  Plaintiff worked as a health care assistant, providing para-professional nursing work in a ward of ambulatory and wheelchair patients mentally and physically ill. Ms. White had no knowledge of any limitations or impairments in plaintiff's ability to perform the job duties, and stated that plaintiff was given no special consideration or job modifications due to any impairments or disabilities.  She indicated there was no record that plaintiff had any problems understanding and following directions and in performing his duties in a timely and satisfactory manner.  She stated that plaintiff stayed on the assigned job with ordinary supervision, was able to concentrate adequately, and did not have trouble getting along with co-workers, supervisors, and the public.  Plaintiff was also able to learn new tasks within an acceptable time frame.  She noted that absenteeism was the only noticeable change in employee's performance during his employment, and stated that plaintiff quit

clearly do not support the opinion of Dr. Xu that plaintiff has a complete inability to function independently outside the area of plaintiff's home.

The ALJ also referenced a report from plaintiff's most recent employer (R. at 19) which does not support Dr. Xu's opinions that plaintiff has marked limitations in numerous areas. Debbie White, the business manager at Kansas Soldier's Home, stated that plaintiff was employed there from June 3, 2004 through August 27, 2004.  Plaintiff worked as a health care assistant, providing para-professional nursing work in a ward of ambulatory and wheelchair patients mentally and physically ill. Ms. White had no knowledge of any limitations or impairments in plaintiff's ability to perform the job duties, and stated that plaintiff was given no special consideration or job modifications due to any impairments or disabilities.  She indicated there was no record that plaintiff had any problems understanding and following directions and in performing his duties in a timely and satisfactory manner.  She stated that plaintiff stayed on the assigned job with ordinary supervision, was able to concentrate adequately, and did not have trouble getting along with co-workers, supervisors, and the public.  Plaintiff was also able to learn new tasks within an acceptable time frame.  She noted that absenteeism was the only noticeable change in employee's performance during his employment, and stated that plaintiff quit

voluntarily, indicating that plaintiff just called in with no notice and quit (R. at 129-131).  This report also contradicts plaintiff's testimony that he had outbursts with staff when working at Ft. Dodge, and had trouble getting along with co-workers and supervisors (R. at 317-318).

The ALJ also discussed the report of Geniece Kossin, plaintiff's case manager, as follows:

> Geniece M. Kossin, the claimant's case manager, completed a function report on November 24. 2004, one month after meeting the claimant. The claimant's daily activities at that time were described as eating breakfast, going to the library to use the internet and to read, meeting his case manager at various locations within the community, hanging out at home, watching television, and visiting the homeless drop in center to utilize available services. The claimant was noted to need reminders to take medication, but as a side effect of his medications, could not prepare meals or drive and was slow at completing tasks. The claimant reportedly had mood swings from manic to depressive which affected his functioning. Geniece Kossin stated that the claimant had limited memory, lacked the concentration to complete tasks, could not interact with others due to aggressiveness, and was unable to follow through with simple directions (exhibit 3E). This assessment appears to be based primarily on the claimant's stated limitations, as the claimant admittedly does not experience medication side effects other than a dry mouth and is able to prepare at least simple meals. His treating psychiatrist and his therapist did not observe the manic and severe depressive symptoms described in this statement. The claimant was consistently noted by Dr. Xu to exhibit intact attention and concentration and above average

>     intellectual functioning. The claimant has
>     not had difficulty following simple
>     directions, as confirmed by his computer
>     usage and his ability to play chess. This
>     assessment is not given substantial weight in
>     documenting the claimant's limitations due to
>     these contradictions, and is noted to show a
>     greater level of socialization than described
>     by the claimant in testimony.

(R. at 21-22).

The case worker opined that plaintiff had never been able to hold down a job, he cannot follow simple directions or written instructions, his aggressive behavior and mental illness make it increasingly difficult for him to interact or get along with others, he has a limited memory, he lacks the concentration to complete tasks, and he does not have the emotional or mental stability to maintain a full time or part time job (R. at 86-93). However, the evidence noted above in the treatment notes and from plaintiff's last employer contradicts these opinions.

Although plaintiff presents evidence which could support a finding that plaintiff is disabled, the court can neither reweigh the evidence nor substitute its judgment for that of the agency. White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The ALJ discussed the evidence, and provided a detailed explanation for not giving controlling or substantial weight to the opinions of Dr. Xu, and for not giving substantial weight to the opinions of the case manager. The court finds that the ALJ sufficiently indicated the weight given to these opinions. The

treatment notes from COMCARE and the report from plaintiff's last employer provide evidence which contradict the opinions of Dr. Xu and plaintiff's case manager. For this reason, the court finds that the ALJ's decision not to give controlling or substantial weight to the opinions of Dr. Xu and the case manager is supported by substantial evidence.

**IV. Did the ALJ err in his finding that plaintiff's impairments do not meet or equal a listed impairment?**

Plaintiff has the burden at step three of demonstrating, through medical evidence, that his/her impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively. Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

The ALJ is required to discuss the evidence and explain why he found that the plaintiff was not disabled at step three. This court should not properly engage in the task of weighing evidence in disability cases. The court's function is only to review the Commissioner's decision to determine whether her factual findings are supported by substantial evidence and whether she applied the

15

correct legal standards. In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that the plaintiff did not meet or equal any listed impairment. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996).

The ALJ gave a lengthy and detailed explanation in support of his finding that plaintiff's impairments do not meet or equal a listed impairment (R. at 18-20). Plaintiff's arguments in support of a finding that plaintiff's impairment meet or equal a listed impairment rest largely on the opinions of Dr. Xu and the case manager. However, the court has already determined that the ALJ gave sufficient reasons for discounting their opinions. The court finds no clear error by the ALJ in his step three analysis.

Plaintiff argues that the ALJ did not discuss listed impairment 12.03, but only listed impairments 12.02, 12.04, 12.06 and 12.08. That is correct (R. at 20). However, the ALJ discussed the "B" and "C" criteria which are identical in all of these listed impairments. The court finds that the ALJ provided sufficient explanation to support his finding that plaintiff did not meet or equal any of these listed impairments.

**V. Did the ALJ err at step four by failing to describe the physical and mental demands of plaintiff's past relevant work?**

At step four, the ALJ is required by social security ruling

(82-62) to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity. Henrie v. United States Department of HHS, 13 F.3d 359, 361 (1993). At each of these three phases, the ALJ must make specific findings. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).[1]  An ALJ can comply with these

---

[1] In Winfrey, the court noted that the Secretary glossed over the absence of the required ALJ findings by relying on the testimony of the vocational expert (VE) that plaintiff could meet the mental demands of his past relevant work, given his mental limitations as found by the ALJ. The court stated that this practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged. The court went on to say as follows:

> Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review...a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work...[but] the VE's role in supplying vocational information at step four is much more limited than his role at step five...Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.

Winfrey, 92 F.3d at 1025.

requirements if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis.  <u>Doyal v. Barnhart</u>, 331 F.3d 758, 760-761 (10th Cir. 2003).[2]  At the second phase of the step four analysis, the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work.  When the ALJ essentially skips the second phase of the step four analysis by not making any findings regarding the physical and mental demands of claimant's past work, either as performed or as it is generally performed in the national economy, then the case shall be remanded in order for the ALJ to make the specific factual

---

[2] The ALJ's findings in <u>Doyal</u> were as follows:

> The vocational expert testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as light and unskilled, and her past relevant work as an activities director would be classified as light and semiskilled.... The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

<u>Doyal</u>, 331 F.3d at 760.  The ALJ found that plaintiff could perform past relevant work as a housecleaner and a sewing machine operator.  331 F.3d at 761.  As noted above, the ALJ cited with approval the testimony of the vocational expert concerning the physical demands of the 2 past jobs which the ALJ found that the claimant could still perform.

18

findings regarding the demands of claimant's past relevant work. Clardy v. Barnhart, 2004 WL 737486 at *6 (D. Kan. Apr. 5, 2004).

At step four, the ALJ found that plaintiff could perform past relevant work as a laborer, meat products, and as a commercial cleaner (R. at 23).  Then, at step five, the ALJ also found, based on vocational expert (VE) testimony, that plaintiff could perform other work in the economy which exists in significant numbers, including work as a kitchen helper, a photocopy machine operator, and a final assembler (R. at 23-24).

Even if the ALJ failed to describe the physical and mental demands of plaintiff's prior employment, such error is harmless if the ALJ's step five findings are supported by substantial evidence.  At step five, the ALJ, relying on VE testimony, found that plaintiff could perform other work in the economy which exists in significant numbers.  Plaintiff argues that the ALJ erred at step five by not incorporating into plaintiff's RFC that plaintiff is unable to leave his apartment for a month at a time, which the VE indicated would preclude all work (R. at 334). However, the ALJ discussed plaintiff's credibility in detail (R. at 19-21), and specifically referenced plaintiff's testimony that he seldom leaves home.  In response, the ALJ, with citations to the record, noted that he leaves home regularly to play chess, go the library, take walks, goes out with his girlfriend, and had plans to attend a Big Boy Toy Show in April 2005.  For this

reason, the ALJ found that plaintiff's allegations of limited activity levels were not credible (R. at 20).  The court finds that the ALJ's findings on this issue were closely and affirmatively linked to substantial evidence.  <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995).  For this reason, the court finds that substantial evidence supports the ALJ's findings at step five; therefore, any error at step four is harmless error.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on November 27, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge